IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EARNEST MOORE, ) | |
| ) | CASE NO. 5:14-CV-1042 |
| Plaintiff, ) | |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| ) | KENNETH S. McHARGH |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | **MEMORANDUM OPINION &** |
| ) | **ORDER** |
| Defendant. ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 14). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Moore's ("Plaintiff" or "Moore") application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court VACATES the Commissioner's decision and REMANDS the case back to the Social Security Administration.

## I.  PROCEDURAL HISTORY

On December 2, 2008, Plaintiff filed an application for SSI, alleging disability as of November 1, 2008 due to nerve problems in his left foot secondary to a gunshot wound, kidney problems, and balance problems.  (Tr.  228-30, 256).  His claim was denied initially, and again on reconsideration.  (Tr.  160-62, 168-74).  Plaintiff timely filed a request for a hearing, which was held January 7, 2011 before Administrative Law Judge ("ALJ") Frederick Andreas.  (Tr. 67-

105).  A vocational expert, Barbara Burk, appeared at the hearing, and Plaintiff was represented by counsel, attorney Patrick Ebner.  (Tr. 19, 111).

The ALJ issued on unfavorable decision on January 28, 2011.  (Tr. 108-28).  The Appeals Council accepted Plaintiff's request for review, and remanded the case for additional findings.  (Tr. 129-31).  On July 25, 2011, Plaintiff filed another application for SSI benefits, which the Appeals Council associated with the previous application that was the subject of the remand order.  (Tr. 19).  A second hearing was held on January 13, 2013 before Charles Shinn, where VE Bruce Holderead testified, and Plaintiff was represented by counsel, attorney Debra Shifrin.  (*Id.*).

The ALJ issued an unfavorable decision on February 13, 2013, finding Plaintiff was not disabled.  (Tr. 19-31).  After applying the five-step sequential analysis,[1] the ALJ determined

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

  (1)   If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

  (2)   If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

  (3)   If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

  (4)   If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

  (5)   Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

2

Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id*.). Subsequently, Plaintiff again requested review of the ALJ's decision from the Appeals Council. (Tr. 1-6). The Appeals Council denied the request for review, making the ALJ's February 13, 2013 determination the final decision of the Commissioner. (*Id.*). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

## II.  EVIDENCE

### A.  Personal Background Information

Plaintiff was born on April 20, 1968. (Tr. 29 ). He was 40-years-old when he filed his SSI application, 42-years-old at the time of the first hearing, and 44-years-old at the second hearing, making him a younger individual at all relevant times. (*Id.*). He has a high school education and previously worked as a general laborer and telemarketer. (Tr. 257). Plaintiff lives with a friend and does not have a driver's license. (Tr. 46-47). Plaintiff shot himself in the foot while in the military, from which he was dishonorably discharged, and was previously incarcerated for drug-related offenses. (Tr. 443, 450). Plaintiff testified that he underwent treatment for his substance abuse and no longer uses drugs or alcohol, is an active participant in Alcoholics Anonymous and continues to go to counseling, and is a recovery sponsor. (Tr. 52-53). Plaintiff attends church and a separate Bible study each week, gets along with his friends at church, and sees his children regularly. (Tr. 51, 54).

### B.  Medical Evidence

#### 1.  Physical Health

Plaintiff sustained a gunshot wound and subsequent infection to his left great toe in 1989, resulting in chronic osteomyelitis and staph (Tr. 343-44). On August 30, 1989, Plaintiff

---

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

3

underwent a surgical debridgement of necrotic bone and tissue. (Tr. 359-60). Twenty years later, on October 1, 2009, Plaintiff reported to an emergency room with complaints of left foot pain. At this time examination revealed mild tenderness along the medial mid-foot but no edema, and normal neurosensory and vascular functioning. (Tr. 444-45). Plaintiff was diagnosed with tendinitis to the left great toe, with no evidence of trauma, weakness, or infection. (*Id.*).

In November 2009, Plaintiff reported increased pain in his left foot and ankle with edema and decreased range of motion. (Tr. 494). Imaging showed an old chip fracture in left foot bone, with no evidence of recent fracture or dislocation, and no significant osteoarthritic changes. (Tr. 501). Follow-up examinations in April 2010 showed continued complaints of pain, and prescriptions for Gabapentin and Percocet, which Plaintiff claimed were not enough. Examination revealed no edema, but some bruising and deformity in his left foot, and normal gait  (Tr. 476, 478). Plaintiff was referred at this time to pain management. (Tr. 479). On August 16, 2010, Plaintiff complained of swelling in his left foot and toe, but while examination showed limited motion in his left great toe, treatment notes indicated no swelling and full range of motion in all other joints. (Tr. 505).

At an April 14, 2011 follow-up examination with Gina Horne, D.O., of Summa Physicians, Plaintiff complained of increased foot pain due to injury the previous month. (Tr. 657). Treatment notes indicated no clubbing or edema of his extremities, and no new injury but noted pain on top of his left foot. (Tr. 657). Imaging showed remote, posttraumatic changes consistent with Plaintiff's previous gunshot wound. (Tr. 653).

In October 2012, Plaintiff underwent physical therapy for his left foot pain and associated weakness. (Tr. 566). Therapy notes indicated Plaintiff had decreased left lower extremity

4

strength, decreased range of motion, deviated gait, and impaired balance. (Tr. 566). However, therapy sessions resulted in increased functional abilities, including improved mobility and balance. (Tr. 544).

### a. E. A. Matos, M.D.

Plaintiff's treating physician, E. A. Matos, M.D., of Summa Physicians, provided a two-sentence opinion on October 16, 2012, expressing that Plaintiff was unable to work because of a painful left foot resulting from being shot, and a painful MP joint. (Tr. 534). Dr. Matos did not provide any further explanation or support for his conclusory statement. (*Id.*). Treatment records from November 19, 2012 and December 5, 2012 examinations showed dorsal swelling and very painful palpation of the left hand, and painful medical ascept and dorsal of the left foot. (Tr. 639, 642). Additionally, notes indicated normal peripheral pulses, but that Dr. Matos observed Plaintiff limped when walking. (*Id.*). Prior to his first assessment, Dr. Matos referred Plaintiff to a pain specialist, for treatment for chronic pain syndrome, left foot pain, and to an orthopedic/sports medicine specialist, for left foot pain evaluation due to gangrene and gunshot wound, as well as pes planus (flat feet). (Tr. 647). At this time Dr. Matos refilled Plaintiff's pain medication for joint, ankle, and foot pain. (Tr. 648-49).

Dr. Matos provided a second assessment for Plaintiff on January 2, 2013. (Tr. 660). In his opinion, Dr. Matos expressed Plaintiff could lift 5 pounds occasionally, stand or walk for up to 5 minutes, and could never climb, stoop, crouch, kneel, or crawl. (Tr. 659). Dr. Matos further opined Plaintiff's impairments limited his abilities of handling, fingering, feeling, pushing, and pulling with the right hand, that Plaintiff would be off-task for more than 25% of the work day, and would miss more than 4 days of work per month. (Tr. 660). According to Dr. Matos,

Plaintiff should avoid temperature extremes, heights, moving machinery, dust, and humidity. (*Id.*).

    b. **Nhut Nguyen, M.D.**

A consultative examination was performed by Nhut Nguyen, M.D. on September 7, 2006, to evaluate a mass behind his head from a previous head injury, injury to his right fourth digit, and a gunshot wound to his left foot. (Tr. 395). Dr. Nguyen's report indicated Plaintiff stated he had an upcoming appointment for evaluation and surgery for the mass, which previous imaging showed as a hematoma. (*Id.*). Examination revealed some maxillary tenderness, but otherwise normal findings. (Tr. 396-97). Plaintiff had good peripheral pulses, no pedal edema, normal sensation and reflexes, no focal deficits, and was able to walk without difficulty or assistance. (*Id.*). Dr. Nguyen stated the opinion that Plaintiff could walk short, but not long, distances. (Tr. 397).

    c. **Lisa Schroeder, M.D.**

A consultative examination was performed on April 7, 2009, by Lisa Schroeder, M.D. (Tr. 411). Plaintiff complained of left foot pain and swelling that caused him to be off-balance when he walks. (*Id.*). Dr. Schroeder noted Plaintiff was lethargic and had poor breath sounds. (Tr. 412). Plaintiff had poor range of motion and strength in his left foot, but, aside from the great toe, pulses and sensation in his toes was normal. (*Id.*). Plaintiff dragged his left foot when walking, and imaging revealed a marked varus deformity of his left fifth toe, along with a deformity in the phalanx of his great toe. (Tr. 414) Notes further indicated muscle testing results were not reliable due to Plaintiff's poor effort, and that Plaintiff exhibited no problems with his abilities to pick up a coin and key, write, hold a cup, open a jar, button and unbutton, zip a zipper, or open a door. (Tr. 415-16). Dr. Schroeder opined Plaintiff would have difficulty with

6

prolonged standing or walking, and that he would not be able to carry or go up and down stairs. (Tr. 413).

### d. Gary Hinzman

Dr. Gary Hinzman, a non-examining, state reviewing physician, completed a residual functioning capacity form on April 30, 2009, after reviewing the medical evidence. (Tr. 433-40). Dr. Hinzman opined that Plaintiff could perform a range of light work, could stand for 2-4 hours and sit up to 6 hours. (Tr. 434). Further, Plaintiff had limited pushing in his lower extremities due to right ankle problems, and could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps or stairs. Dr. Hinzman opined Plaintiff could lift and carry 20 pounds occasionally, and 10 pounds frequently, and should avoid exposure to pulmonary irritants and hazards. (Tr. 434-35, 437).

### e. Morgan Koepke

Another consultative examination was performed by Morgan R. Koepke, M.D. on October 6, 2011. (Tr. 610-12). Dr. Koepke noted Plaintiff reported he was able to stand for 30 minutes, walk 100 feet and carry up to 40 pounds, and performs activities of daily living, including bathing, cooking, cleaning, and dressing (including buttoning and unbuttoning). (Tr. 610). Examination revealed full range of motion of bilateral upper extremities at all joints, intact range of motion in all lower extremity joints, except the left ankle, and no obvious deformity or malformation of the dorsal aspect of Plaintiff's left foot (although Plaintiff pointed to several areas he believed were deformed). (Tr. 611). Dr. Koepke observed Plaintiff walked with a slight limp, and noted he was not actively seeking medical care for his foot beyond narcotic pain medication. (Tr. 611-12). Dr. Kroepke opined Plaintiff could perform full work duties, standing up to 6 hours in an 8-hour work day, could lift/carry up to 50 pounds occasionally, and 40

7

pounds regularly, and could walk short distances but not a great deal of long distances. (Tr. 611).

## 2. Mental Health

### a. Joshua Magleby, Ph.D.

On October 2, 2009, Plaintiff underwent a consultative psychological examination by Joshua Magleby, Ph.D., to determine the extent and degree of psychological or behavioral disability. (Tr. 449). Plaintiff reported he suffered from auditory hallucinations that were reduced by medication, which allowed him to sleep better. (Tr. 451). Dr. Magleby observed that Plaintiff had fair hygiene and appropriate dress, as well as fair judgment and common sense reasoning. (Tr. 451, 453). Despite Plaintiff's denial of illicit drug use, Dr. Magleby noted Plaintiff appeared to be under the influence, reflected poor executive functions and mental processing speed, exhibited mild persecutory thoughts, and had poor behavioral control and consequential thinking. (Tr. 452-53). Plaintiff was assigned a GAF score of 45, in the serious range of mental symptoms.

Dr. Magleby concluded Plaintiff suffered from Polysubstance dependence, Schizoaffective Disorder, Bipolar type, Borderline Intellectual Functioning and Personality Disorder NOS. (Tr. 454). Regarding Plaintiff's work-related mental abilities, Dr. Magleby opined he had a moderate impairment in his ability to appropriately relate to others and to maintain attention and concentration to simple work-related tasks, and a mild-to-moderate impairment in his ability to follow short, simple instructions or directions. (Tr. 454-55). Further, Plaintiff had marked limitations in his abilities to follow complex instructions, adapt and tolerate work stress, and manage money, as well as a moderate-to-marked impairment to obtain productive employment. (Tr. 455).

On December 22, 2010, Plaintiff underwent a psychiatric evaluation, resulting in a diagnosis of Schizoaffective Disorder, Post-Traumatic Stress Disorder, and Panic Disorder with agoraphobia. (Tr. 594). Examination notes indicate Plaintiff had an organized thought process and responded appropriately, but exhibited limited insight and appeared distracted. (Tr. 593). Additionally, the psychiatrist noted Plaintiff complained of obsessive thoughts and nightmares, as well as auditory and visual hallucinations, and paranoid thoughts about his probation officer. (Tr. 591-94). Plaintiff was assigned a GAF score of 40, indicating major mental impairment. (Tr. 594).

### b. Kristen Haskins, Psy.D.

On November 6, 2009, agency reviewer Kristen Haskins, Psy.D., completed a Psychiatric Review Technique Form for the time period of November 1, 2009 through November 6, 2009. (Tr. 458). Dr. Haskins concluded Plaintiff suffered from disorders in the following categories: Affective Disorders, Mental Retardation, Personality Disorders, and Substance Addiction Disorders. (*Id.*). The form indicated Dr. Haskins was unable to opine as to Plaintiff's functional limitations due to insufficient evidence. (Tr. 468). Evaluation notes relayed Plaintiff's reports of a history of drug and alcohol abuse and auditory hallucinations. (Tr. 470). Despite Plaintiff's report that he had not used drugs since November of 2008 (although he planned to again use marijuana once he was off probation), notes stated Plaintiff appeared under the influence during the evaluation. (*Id.*). Further, Dr. Haskins found Plaintiff's statements were not fully credible and that she suspected that he exaggerated his symptoms. (*Id.*).

### c. E. M. Bard, Ph.D.

On September 29, 2011, Plaintiff underwent another consultative psychiatric evaluation with E. M. Bard, Ph.D. (Tr. 601). Plaintiff again reported his auditory hallucinations, paranoid

9

thoughts, and depressive feelings, as well as problems sleeping and a history of aggression. (Tr. 601, 604-05). Dr. Bard noted relevant, coherent speech, appropriate hygiene and dress, but blunted affect and reserved mood. (Tr. 605). Evaluation notes indicated Plaintiff reported concentration problems, and that, despite some problems with his right hand, he is able to operate kitchen appliances, prepare simple meals, handle finances, and complete household chores. (Tr. 604). Dr. Bard questioned the reliability of Plaintiff's testimony, and opined that, due to his forensic history, Plaintiff would have difficulty dealing with authority figures, supervisory personnel, and work stress. (Tr. 607-08). She further opined that Plaintiff would have no substantial limitations in carrying out instructions and maintaining concentration. (Tr. 607).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since December 2, 2008, the application date.

2. The claimant has the following severe impairments: status post gunshot wound to the left foot with residual pain, schizoaffective disorder, posttraumatic stress disorder, and polysubstance abuse in remission.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. He can sit for six hours and stand/walk for two hours during a workday. He can never climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs. The claimant must avoid concentrated exposure to dust, fumes, gas, odors, and poorly ventilated areas. He must avoid exposure to hazards, such as unprotected heights or dangerous moving machinery. The claimant is limited to simple, routine tasks that do not involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety or welfare of others. He cannot perform work requiring strict production quotas. He cannot perform piece rate work or assembly line work. The claimant is limited to only occasional interaction with others.

10

5.  The claimant is unable to perform any past relevant work.

6.  The claimant was born on April 20, 1968, and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.  The claimant has at least a high school education and is able to communicate in English.

8.  Transferability of job skills is not an issue because the claimant's past relevant work is unskilled.

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since August December 2, 2008, the date the application was filed.

(Tr. 52-59) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  See *Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See *Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  Opinion Evidence

Plaintiff asserts the ALJ did not articulate valid reasons for rejecting the treating source's opinion and parts of consulting sources' opinions.  It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004).  This doctrine, referred to as the "Treating Source Rule," recognizes that physicians who have a long-standing relationship with an individual are best-equipped to provide a complete picture of the person's health and treatment history.  *Id*; 20 C.F.R. § 416.927(c)(2).  Opinions from treating physicians are entitled to controlling weight only if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Id.*

When an ALJ determines a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following factors in deciding what weight is appropriate:  (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) any other factors which tend to support or contradict the opinion.  *Id.*  Moreover, the regulations require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions.  *Id.*

It is well-established that for an ALJ's decision to stand, the ALJ is not required to discuss every piece of evidence in the record.  See, e.g., *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  Nevertheless, if the opinion of a medical source contradicts the RFC finding, an ALJ must explain why he did not include its limitations in the determination of the RFC.  See, e.g., *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p explains, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

1. **Dr. Matos**

Plaintiff's objection to the ALJ's assignment of little weight to the opinions of Dr. Matos, Plaintiff's treating physician, is without merit.  The Treating Source Rule does not require a factor-by-factor analysis so long as the ALJ's decision clearly conveys why the opinion was

credited or rejected. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). Here, the ALJ recognizes Dr. Matos as a treating physician, and offers good reasons for rejecting the opinions, taking into account the requisite factors under the Treating Source Rule.

The ALJ does not, as Plaintiff argues, improperly substitute his own judgment for that of the treating physician by finding Dr. Matos' opinions were not supported by the record.  It is correct that an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (*quoting Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)).  Yet, the ALJ reserves the right to decide certain pertinent issues, such as the claimant's RFC, based on her evaluation of the medical and non-medical evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "An ALJ does not improperly assume the role of a medical expert by assessing the medical and nonmedical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (internal citations omitted).

Regarding Dr. Matos' October 16, 2012 opinion that Plaintiff is "unable to work," the ALJ determined the evidence in the record did not support the opinion.  In support, the ALJ explained that treatment notes suggested he retained adequate functioning, and that Dr. Matos did not point to any functional limitation that would preclude Plaintiff from working altogether. (Tr. 28). Additionally, the ALJ correctly asserted that the opinion that Plaintiff is "unable to work" is inappropriately determined by the doctor, as it is a determination that is left to the Commissioner. (*Id.*). *Turner v. Comm'r*, 381 Fed. Appx. 488, 492 (6th Cir. 2010) ("When a treating physician instead submits an opinion on an issue reserved to the Commissioner—such as

14

whether the claimant is 'disabled' or 'unable to work'—the opinion is not entitled to any particular weight.").

The ALJ also performed a proper treating source analysis for Dr. Matos' second opinion, dated January 2, 2013. (Tr. 28-29, 659-60). Here, the ALJ gave little weight to Dr. Matos' opinion that Plaintiff could stand or walk for only five minutes, and that Plaintiff had trouble handling, fingering, feeling, pushing, and pulling with his right hand. (Tr. 28, 659-60). The ALJ stated Plaintiff's wide array of activities, including ushering at football games, cooking, and travelling suggested Plaintiff is capable of functioning beyond those limitations set forth in Dr. Matos' opinion. In support, the ALJ explained the record showed Plaintiff generally remained capable of walking, despite restricted range of motion and a limp, and that physical therapy notes showed improvement in strength and overall functioning. (Tr. 29). The ALJ also properly explained his rejection of extreme limitations as to hand functioning, noting that the record does not reflect that such limitations had existed, or would exist, for twelve months. (*Id.*). In so doing, the ALJ acknowledged the record supported lesser hand functioning limitations, which the RFC accounted for by limiting Plaintiff to light work. (*Id.*). Plaintiff does not point to any evidence that contradicts the ALJ's analysis. See generally *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996) (stating the opinion of the ALJ is valid so long as its opinion is supported by substantial evidence, even if substantial evidence exists that would have supported a different finding).

Plaintiff's argument that the ALJ erred in affording only some weight to the opinions of Dr. Magelby and Dr. Bard also fails. The ALJ accepted Dr. Magelby's opinion that Plaintiff had moderate restrictions relating to others and following instructions, reasoning such limitations are supported by the record. (Tr. 25). However, the ALJ found little support on the record for a

marked limitation relating to others, and determined Plaintiff's activities, namely sponsorship participation with Alcoholics Anonymous, ushering at football games, and regular church attendance, contradicted such a limitation. (*Id.*). Further, rejecting a marked limitation in his ability to manage funds, the ALJ determined Plaintiff's sobriety over the past several years countered the extreme limitation, as it suggested he could exercise adequate judgment. (*Id.*).

Weight is afforded to the opinion of Dr. Bard, who opined Plaintiff would have difficulty with supervisors and withstanding work stress, but no substantial limitations in carrying out instructions and maintaining concentration. (*Id.*). The ALJ found that the record supported some limitation in his ability to interact with authority figures. (*Id.*). However, the ALJ determined that Plaintiff also had some limitation as to his ability to follow instructions, due to record evidence that he appeared distracted at times. (*Id.*). The ALJ offered good reasons for his findings, and Plaintiff fails to adequately support his assertion that the RFC limitation to simple, routine tasks and only occasional interaction with others does not account for these limitations. (*Id.*).

**B. Step Five**

Plaintiff argues the ALJ did not meet his burden at Step Five of the sequential evaluation. Specifically, plaintiff asserts that the first hypothetical presented to the vocational expert, and later adopted by the ALJ in formulating his RFC, was insufficient because it did not adequately account for Plaintiff's hand functioning limitations, or his limited abilities to stay on task or work in conjunction with others. Thus, according to Plaintiff, because the VE's testimony was based on insufficient hypotheticals, it could not be used as substantial evidence that a significant number of jobs exist in the national economy that Plaintiff can perform.

At the fifth and final step of the disability analysis, the ALJ must determine whether, in light of the claimant's RFC, age, education, and past work experience, the claimant can make an adjustment to other work.  20 C.F.R. §§ 404.1520(a)(v), 416.920(a)(v).  At this step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs.  *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 799 (6th Cir. 2004) (*quoting Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).

Testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence that the claimant has the ability to perform specific jobs as long as the question accurately accounts for the individual's physical and mental impairments.  *Varley*, 820 F.2d at 779 (quoting *Pasco v. Comm'r of Soc. Sec*., 137 F. App'x 828, 845 (6th Cir. 2005).  But "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts."  *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005)).  When forming a hypothetical question to present to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible.  *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Plaintiff argues that the first hypothetical, later adopted as the RFC, does not account for limitations in Plaintiff's abilities to stay on task or work with others.  The ALJ, however, through proper analysis, discounted opinions of more than moderate limitations in Plaintiff's abilities to

relate to others and maintain attention and concentration. Plaintiff does not show how the hypothetical (and RFC), which restricted Plaintiff to simple, routine tasks with no production quotas or assembly line work, does not fully account for his attention and concentration limitations. See generally, cf., *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 932 (E.D. Mich. 2005) (limitation to simple, routine work insufficient where claimant has moderate limitation in her ability to concentrate, persist and keep pace because it does not account for potential inability to meet quotas or work at a consistent pace). Further, as discussed above in the opinion analysis, Plaintiff fails to demonstrate sufficient support for his argument that the RFC's "occasional interaction with others" limitation does not account for his moderately limited ability to work in conjunction with others. Thus, because the first hypothetical presented to the VE properly accounted for Plaintiff's mental limitations, his argument that the VE testimony does not provide substantial evidence, based on inadequate assessment of these abilities, is unavailing.

However, Plaintiff is correct that the ALJ failed to meet his burden at Step Five, due to the Plaintiff's hand functioning limitations. Although the ALJ properly rejected the severe limitations presented by Dr. Matos' opinion, he acknowledged that the record supported a finding that Plaintiff had some residual hand functioning limitations that are adequately accounted for by the RFC's restriction to light work. While a limitation to light work may account for some hand function limitations, the ALJ failed to specify the extent of Plaintiff's hand function limitations beyond not reaching the severity as proposed by Dr. Matos. See S.S.R. 83-10, 1983 WL 31254, *2 (1983) ("After it has been decided that an impaired person can meet the primary strength requirements of sedentary, light, or medium work—sitting, standing, walking…—a further decision may be required as to how much of this potential occupational

base remains, considering certain nonexertional limitations which the person may also have. For example…[m]ost sedentary jobs require good use of the hands and fingers.").

As such, the testimony that a significant number of jobs existed in the national economy that Plaintiff can perform, based on the first hypothetical, is inadequate. The vocational expert, incorporating hypothetical one, testified Plaintiff would be able to perform work as an addresser (DOT 209.587-010), a touch-up inspector (DOT 726.684-050), and a touch-up screener (DOT 726.684-110). (Tr. 30). The first hypothetical does not provide a specific limitation for hand functioning, and the VE testifies that, although the RFC and hypothetical purported to limit Plaintiff to light work, in actuality, there are no jobs that exist above the sedentary level under this hypothetical due to the stand/walk limitation. (Tr. 60). Although it is generally assumed that an individual that can perform light work can also perform sedentary work, the specific jobs presented by the VE here have general hand functioning requirements. DOT 209.587-010, 726.684-050, and 726.684-110. Indeed, when the ALJ added specific upper extremity limitations—no effective use of the upper left extremity for a right-hand dominant individual (hypothetical two), and use of both hands but can only occasionally handle, finger and feel bilaterally (hypothetical three)—the VE testified that he would not be able to perform these three jobs, or any other at the sedentary level. (Tr. 61-62).

The ALJ clearly acknowledged that the record supported a finding that Plaintiff may have some residual functional limitations for the use of his hands, despite rejecting the severe limitations presented by Dr. Matos, and those incorporated into hypotheticals two and three. (Tr. 29). However, because he failed to articulate the nature of the residual limitations, or even how the restriction to light work accounted for the limitations, it is unclear whether the jobs presented by the VE, or *any* jobs in the national economy, can be performed by Plaintiff. It is not apparent

19

that hypothetical one accurately accounted for the individual's physical impairments with regard to his hand functioning abilities, and thus the VE's testimony based on that hypothetical is not substantial evidence that significant jobs exist that Plaintiff is able to perform.  *Varley,* 820 F.2d at 779 (*quoting Pasco*, 137 F. App'x at 845).  Accordingly, remand is necessary for clarification as to Plaintiff's functional abilities, and further analysis at Step Five.

Because the case is remanded back for further Step Five analysis, it is unnecessary for this Court to address Plaintiff's argument that the first hypothetical did not result in finding jobs that constituted a "significant number of jobs" in the national economy as contemplated by SSR 83-10.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  October 1, 2015